UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| YOSHIKI OKADA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 1:18-cv-01338 (LO/TCB) |
| JOHN DOE, *et al.*, | ) ) ) |
| Defendants. | ) ) |

## ORDER

THIS MATTER comes before the Court on Plaintiff's Motion for Default Judgment (Dkt. 10). At the December 7, 2018, hearing, the undersigned requested supplemental briefing from Plaintiff, which the undersigned received on December 20, 2018. However, on January 16, 2019, the undersigned issued an order directing Plaintiff to file additional briefing. (Dkt. 15.) Plaintiff complied and filed the supplemental briefing on March 19, 2019. (Dkt. 16.) Upon review of the supplemental briefing, the undersigned believes Plaintiff has not adequately addressed the undersigned's concerns regarding his common law trademark ownership of Defendant Domain Names. Perhaps further explanation of the undersigned's concerns may aid Plaintiff in complying with this order.

A plaintiff, before receiving the protection of ACPA, must satisfy several requirements. One such requirement is that Plaintiff must establish that he possesses a valid and protectable mark. *See Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 549 (4th Cir. 2004) ("Thus, a prerequisite for bringing a claim under the ACPA is establishing the existence of a valid trademark and ownership of that mark."). An unregistered or common law trademark may very well be entitled

to common law trademark protection. However, quite obviously, a plaintiff bringing an ACPA case must make a showing that the disputed marks are entitled to common law trademark protection. In *Klumba.UA, LLC v. Klumba.com*, this Court succinctly explained this requirement:

> Importantly, unregistered or common law marks are entitled to protection under the ACPA. *Lamparello v. Falwell*, 420 F.3d 309, 311 (4th Cir. 2005) (quoting *PETA v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001)). But equally importantly, common law trademark rights are acquired only through actual use of the mark in a given market in the United States. *Id.*; *see also United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97–98, 39 S. Ct. 48, 63 L. Ed. 141 (1918). To establish the existence of a common law trademark right, a party must show that the mark is (i) used in commerce, and (ii) is distinctive among United States consumers. *Int'l Bancorp v. Societe des Bains de Mer*, 329 F.3d 359, 363 (4th Cir. 2003).

320 F. Supp. 3d 772, 777 (E.D. Va. 2018). Therefore, Plaintiff must further explain how he possesses common law trademark rights in Defendant Domain Names.

Relatedly, the Court remains concerned about the type of business Plaintiff conducted under the Defendant Domain Names. The Court appreciates the decision reached in *Weitzman* regarding whether domain monetization, pay-per-click advertising, and domain parking qualified for ACPA protection. Nonetheless, the Court is not entirely convinced. Post-*Weitzman*, this Court has found on several occasions that a defendant violated ACPA because, in part, they only used the disputed mark and domain name for pay-per-click advertising. *See, e.g., FPS Networks, Inc. v. IOGameSpace.com*, No. 1:18-cv-1248-LO-MSN, 2018 WL 7575195, at *5 (E.D. Va. Dec. 27, 2018) ("[D]efendants have not engaged in bona fide noncommercial or fair use of plaintiff's mark or a bona fide offering of any goods or services, as the websites displayed at defendant domain names display pay-per-click advertisements with content related to the legitimate IOGAMES SPACE site and services."); *Entrepreneur Media, Inc. v. B-Entrepreneur.com*, No. 1:11-cv-583, 2012 WL 12863350, at *4 (E.D. Va. Feb. 9, 2012) ("[Defendants] do not offer bona fide goods or services, and apparently only generate pay-per-click revenue."); *Travelers Indem. Co. v.*

*Travellers.com*, No. 10-cv-448 (LO/JFA), 2011 WL 5975082, at *5, *7 (E.D. Va. Nov. 28, 2011) (finding defendant's pay-per-click advertising program had not "been legitimate"); *see also Webadviso v. Bank of Am. Corp.*, 448 F. App'x 95, 98 (2d Cir. 2011) (holding plaintiff "ran afoul of the ACPA" by "acquir[ing] high value domain names and park[ing] them with domain parking service providers to generate pay-per-click revenue." (quoting *Webadviso v. Bank of Am. Corp.*, No. 09 CV 5769, 2010 WL 521117, at *2 (S.D.N.Y. Feb. 16, 2010)); *cf. Go Fit LLC v. gofit.com*, No. 1:11-cv-689 (TSE/TRJ), 2011 WL 7004185, at *3 (E.D. Va. Dec. 20, 2011) (noting ACPA was intended to address, in part, defendant's apparent "warehousing" of domain names). For instance, the Court is especially concerned about the prospect of granting relief when Plaintiff's only use for domain names such as <tang.com>, <wtv.com>, and <nnn.com> is domain monetization. Names such as "tang" arouse the Court's suspicion that Plaintiff may be engaged in the type of activity that ACPA was intended to remedy. Accordingly, it is hereby

ORDERED that Plaintiff file a supplemental brief detailing how he has obtained common law trademark ownership in each of the Defendant Domain Names. In particular, the Court would like Plaintiff to address (1) how these marks are distinctive and (2) why the purported use of these marks for domain monetization and resale entitles him to relief under ACPA. It is further

ORDERED that Plaintiff file the supplemental briefing by 5:00 p.m. on April 5, 2019.

ENTERED this 26th day of March, 2019.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

Alexandria, Virginia

3